Good morning. Each side will have 15 minutes for argument, and Mr. Abney, you may begin when you're ready. May it please the Court, my name is David Abney. I'm here today with Scott Halverson, representing the Plaintiff Appellant Krish Singh. I hope that my words will help the Court resolve this very interesting case. I've never had an excessive force case before where the judge made so many findings of fact in favor of the plaintiff. And in fact, in pages 8 to 11 of the opening brief, I identified 19 jury questions that the district court identified, and 11 statements of fact that the district court made, all of them in favor of the plaintiff. In particular, the district court found that at no time after the police officers arrived, did Mr. Singh make any threatening gesture to the police officers, never made any verbal threats to the police officers, never made any physical or verbal threats to anyone else, was holding the knife to his own throat, and whenever he moved toward the police officers and they told him to stop, he stopped. And just before the shooting itself, the district court said, well, reasonable jurors could find, based upon the video evidence, that he was indeed stopped before the police officers shot. So it's an unusual case. I've never had that wealth of fact before. And in this case, however, after all of that, the district court said that since it wasn't beyond debate that what the police officer had done was something that they would realize was unconstitutional, it was realized that it was wrong. But we have this marvelous Glenn v. Washington County case that had, in substance, facts that are very similar to the situation here. In the Glenn case, the young man was emotionally upset. He was suicidal. He was holding a knife to his own throat. After the police officers arrived, he never made any threat against the police officers, never made any threat against anyone else. And in fact, when the police officers arrived, he was standing close by friends and family and was not doing anything harmful except for the odd thing of holding that knife to his own throat. Another slight difference, which actually militates in favor of our client, is that the police officers were very close, 6 to 10 feet description for one of the officers, 6 to 12 feet description for another one of the officers, and nothing in between them at all. They were an unobstructed view, nothing between them and Mr. Glenn. But here, you had the police officers who took advantage of the cover in the parking lot. They placed themselves behind the vehicles in such a way that they would be protected. There was no way, if Mr. Singh wanted to attack them, that he could get to them very easily. They had distance. And when he moved, they would move. So you had every reason to expect that this would actually turn out well, that the police officers would take advantage of their tasers, would take advantage of their pepper spray, would wait a few minutes for the canine units to arrive who were on the way to help subdue Mr. Singh without any need to fire any weapons at him. They had the ability to control the situation, to slow things down, to make sure that nothing bad happened to Mr. Singh. But at one point, the police officer seemed to just get tired of the whole thing. I mean, they had been doing this for several minutes. They had been trying to calm Mr. Singh down. And then at some point, for reasons I cannot tell from the record, she had told him to stop in this last movement toward him. The district court judge said reasonable jurors could find that he was indeed stopped. And then she just shot him. There comes a point in many of these encounters where the police lose patience. They simply had enough. But police officers need to be exceptionally patient, especially when they're dealing with someone who's mentally ill. And when they have time and distance on their side, when they have more resources they could use but don't use, when they have more police officers arriving with more equipment, and especially with canine units, you know, it's bad getting a dog bite, but it's a heck of a lot better than getting shot in the abdomen. And so they have all these things going for them, everything they needed, and she just shot him. It's hard to explain. It's hard to understand. I rely very, very heavily on this Glynn versus Washington County case. And I don't mean to butter up the Ninth Circuit, but this is a great opinion. It really goes through all the factors that you need to deal with a qualified immunity case, both pro and con, all the elements. Everything is set out there in 1, 2, 3, 4, 5, 6. Everything is lined up. For instance, I know I should have used a paper clip. Hold on a second. In terms of analyzing these kinds of situations, the Glynn case talks about the steps, the three steps. Analyzing the severity of the intrusion. Well, there's no doubt that shooting someone is a very severe intrusion on their Fourth Amendment rights. Evaluate the government's interest in the use of force. Here, there is an interest in resolving this without using force. There was no need to use the force. And then balance the gravity of the intrusion on the individual against the government's need for the intrusion. And if you do the balance here, there was no need to fire the weapon into the abdomen of Mr. Singh. It goes on to say this important qualification to any analysis in this kind of excessive force case is to grant summary judgment sparingly. Not as a first resort, but as a last resort in the analysis. And then the Glynn opinion goes through the factors to evaluate in this kind of a situation. First factor, whether the suspect poses an immediate threat to the safety of the officers or others. Here, there was no immediate threat. There was no verbal threat. There was no physical threat. The severity of the crime. And here you get into a very murky area. There were reports that Singh had been chasing someone with a knife or committing some sort of a crime. But when the police officers got there, there was nothing of that nature going on at all. He was simply there, distraught, upset, threatening to kill himself, had a knife to his own throat, but made no threat against the police officers and made no threat against anybody else. The next factor is whether there's an active attempt to evade arrest or attempt to evade arrest by flight. Active resistance. There's no active resistance here. This is a very passive situation from his point of view. He's simply not cooperating. He is upset. He's got the knife to his throat. He's not threatening anybody. He's not attacking anybody. He's just not cooperating. The court reinforces the need to look at the totality of circumstances, which is what the district court did up until the final denouement, when all of a sudden the district court finds that, well, it's not beyond debate that this is a situation where the police officers would know that they should not use force. And really, it really is beyond debate that they should have known they should not have been using any force of this nature. Other factors include the availability of less intrusive alternatives to the force used. Here we had other available mechanisms. We had tasers. We had pepper spray. We had canine units on the way. We had other officers on the way. Whether proper warnings were given. Here, proper warnings were given. I give the government that much. That's a fact. They were trying to defuse the situation. They were doing much better than the officers in Glenn did, but still they were not getting through to him. And then finally, whether it should have been apparent that the person they used force against was emotionally disturbed. And here, anybody would see, in any dealing with Mr. Singh at that point in his life, he was severely emotionally disturbed. In Glenn, the district court stressed the fact that the officers were justified in shooting Lucas because he supposedly posed an immediate threat to officers and bystanders. We don't have that here. And the district court in Singh relied on the fact that the district court in Glenn relied on the fact that there was a knife involved, which is a very serious thing to have in a hand. But in the end, in Glenn, according to the analysis from this court, it didn't matter a whole lot because he was not threatening anybody with that knife. He was simply holding it to his own throat. One thing that was stressed in the Glenn opinion was that at no time did Glenn attack the officers and at no time did he ever threaten to attack them. Another instance of close correlation between Glenn and this particular case, another factor was there was no threat of any immediate harm to anyone. The court stressed the emotional disturbance aspect. And then it got down to a very interesting statement, page 876, 877 of the opinion. And it says, we have made clear that the desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that standing alone justifies the use of force that may cause serious injury. And I submit to you that Officer Smith-Peterson reached a tipping point in her own mind where she wanted to get this over with. But that is not, that sort of a desire for a quick resolution is not a valid consideration. And then finally, we had a marvelous police officer expert. He talked about police procedures and what should have been done, what should not have been done. And that's great testimony. Expert opinion testimony can be immensely useful to the trier effect. And in Glenn, the court said that Glenn had offered his own expert, 50 years of experience in police practice. And he said that the police officers had escalated a static situation into an unnecessary and avoidable shooting. And we have held, quote, we have held en banc that a rational jury could rely upon such expert evidence in assessing whether the officer's use of force was unreasonable. We have a great expert. He gave very detailed opinions. And it's something that the trier effect could have relied upon in this case, but the case didn't get to the trier effect. I see I've got about three minutes left. If there's no questions, I will cede the floor to my colleague. Are you reserving the balance of your time? Yes, Your Honor. I'm reserving the balance of my time. All right. Thank you. Thank you very much. Thank you. Good morning, Your Honors, and may it please the court. My name is Ashley Caballero-Daltrey, and I represent the police and cross-appellants Officer Smith-Peterson, Officer Batway, and the City of Phoenix. With me at council table is Justin Ackerman, also representing the same. So what I'd like to do is address first the appeal, and then if there's enough time remaining, I'll address the cross-appeal. But as you already heard from the prior argument, there's a lot of questions in this case that overlap between both halves of the appeal because this case is so different from Glenn on all of the relevant gram factors. But before I get into that, I would like you to get into that because it looks pretty much like Glenn to me. And so where do you think there is a material difference that would not have given the officer the understanding that this was not a situation in which to use deadly force? So in Glenn, the suspect never moved towards the officers at any time. In fact, he only moved once. But they were already close, just a few feet away, closer than Officer Smith-Peterson ever was to Mr. Singh, at least as I understand the record. That's correct, Your Honor. And she had a car between her and him, right? She had the car between her and Singh until he crossed in front of her barrier at the very end when she finally used deadly force. And I think that's a very important factor. Singh created this issue by stepping around her barrier and coming into her space. How far away were they at the time? Farther than in Glenn or about the same? I'm not sure, Your Honor, from the video. It looks like they're about five feet away, but I'm not entirely sure on the exact distance. Nevertheless, in Glenn, the suspect never moved towards the officers and instead only moved one time. And the one time that he moved was after he had been shot by the beanbag rounds, and it appeared that he was moving away from where he was being shot and away from the officers. In our case, in contrast, Singh is moving three times despite 20 lawfully given commands, despite warnings, which there weren't very many in Glenn. Because in Glenn, the officers were yelling at him continuously. Did he ever make any sudden movements? Because from watching the video, my understanding is that he took three small steps slowly forward. But beyond that, was there any sudden movements? No, but I don't think that the sudden movement issue is dispositive because he came around her barrier. Well, I mean, it matters, right, because the idea is that the officer would need to feel threatened or know that the circumstances have changed so that it's no longer a situation that can be controlled through some force that's not deadly. Yes, Your Honor, but the situation had changed because he moved around her barrier and she was no longer safe. He's now moved around her cover, moved around her barrier. If she were to continue to move, which she's not constitutionally required to do, she would have broken the L-shaped formation that she had with Officer Batway, which would have put Officer Batway in danger. Furthermore, both of the officers testified that they didn't feel like they could contain him in the parking lot. This is a big open parking lot. That's another difference from Glenn because in Glenn, this happened at a home, but they're in a big open parking lot. They've already responded to a call of a potentially violent felony, an attempted armed robbery. Again, a difference from Glenn because the backdrop in Glenn was that the officers were responding there to somebody involved in a domestic dispute. Which is normally more dangerous than any other crime. And also, apparently, you know, violent threats against family members are more likely to be carried out than violent threats towards strangers, right? That may be the case, Your Honor, but this court in Glenn explicitly recognized in a footnote that for the purposes of the Graham factors, this court does not consider that as severe a crime as other crimes. I believe that's in footnote 9, but I can pull up the exact citation for you if you'd like. And in fact, this court recently in Hart v. City of Redwood City explicitly contrasted Glenn on these same facts from Hart v. City of Redwood City. So in that case, officers responded to someone who was attempting to commit suicide in his backyard. When they arrived on scene, he moved towards them. He had a knife. It seems like there was a question as to how he held the knife. At different points, this court referred to him holding it, brandishing it, 45-degree angle. It's not entirely clear from the opinion. Regardless, he came at them holding the knife. And this court said that was a different situation than Glenn because in Glenn, the suspect never advanced on the officers. This court also found that that use of force was reasonable as a matter of law because the fact that someone was advancing on an officer with a knife was inarguably a threat. And in fact, in that case, the expert had even, for the plaintiff, had even conceded that it was, of course, a threat if someone advanced on an officer with a knife. And that case is consistent with this court's opinion in Estate of Hernandez v. City of Los Angeles. This is another case involving a suspect with a knife, another case involving someone attempting to harm themselves. So in Estate of Hernandez, officers arrived on the scene and saw a man inside of his car after causing a car accident. People on the scene told the officers that the man was only attempting to harm himself and was, in fact, in the car actively self-harming. When he got out of the car, he moved towards the officers with the knife. The officer fired a shot. She fired multiple volleys. But for the purposes of the first shot, this court held that that was reasonable as a matter of law because as he was moving towards her, he was an eminent threat to her safety. And I think it's important to note also that both in Hart and in Estate of Hernandez, this court never refers to sudden movements. It never refers to harring movements, even though that's language we typically see in Glenn, because this court was so certain that the fact that someone would have a knife and advance on an officer necessarily put them in danger. Another thing that's important about the knife in this particular situation and that we didn't hear is that the knife was actually pointed towards the officers. So although he's holding it up to his neck, the blade is towards the officers and not towards himself, which is to say that if he walked up towards them, he could easily attack them rather than himself because the blade is already facing them. And the officers both testified that this was a much more dangerous situation for them than if the blade had been facing his own neck. And so this court can and should find that that difference in that immediate threat, the fact he's actually advancing, advancing despite warnings and despite being told that they will shoot him if he continues to advance, shows that he is a threat. And that particular piece is case dispositive. It was in Hart v. City of Redwood City. This court said it did not have to continue on with its analysis because the fact that he advanced on the officers with a knife was enough to show that the use of force was reasonable. But even if we were to continue, as this court did in Hart, just to go through the rest of the factors, they also support Officer Smith-Peterson's use of force in this case. So you heard from opposing counsel that there were 19 jury questions in this case. In fact, the district court explicitly at ER 15 through 16 identified only four, potentially five issues of fact. So it doesn't really matter the number, does it? No, Your Honor. If they're issues of fact, they're issues of fact. No, Your Honor. You're correct. The number doesn't matter. But I think it's important to recognize we're working with this very small universe of issues of fact. And, in fact, those issues are neither genuine or dispositive. One of them is whether he was a threat. But that's not actually an issue of fact because here there is video. This court can review that video pursuant to Scott v. Harris. You know, it seems to me you're asking us to be the jury when you talk about whether there was a genuine threat or there wasn't. This is, I guess, related to your cross appeal. But it seems to me that your cross appeal is really an argument about the facts. And when the district court holds that there is an issue of fact and your argument is, no, there isn't because if you look at it right, we win, we don't have jurisdiction over that, do we? I disagree that that's the case here for two reasons, Your Honor. First of all, because Scott v. Harris allows this court to view the videotapes. There are two body-worn cameras in this case and to view it in the light most favored or the light depicted in the cameras. And second of all, there's not actually an evidentiary. I think you're actually misstating the rule. If the city were arguing here that we could take the facts in the light most favorable to the plaintiff, there is still no constitutional violation. That would be one thing. But what you just said, I think, goes to Judge Graber's point, which is you're asking us to reweigh the evidence to determine whether, in fact, these are disputed facts. That was the holding in Scott v. Harris is that when the video is clear, this court can view the facts in the light of the video. But I think more importantly, there's not actually an evidentiary problem. It's not that the video cuts out at one point and we don't know what it shows or that we're looking at differing testimony between different people. The video shows what it shows. It shows a man approaching the officers with a knife. Whether he was a threat is a legal conclusion this court can come to, just like it did in Hart. You know, it is and it isn't. I mean, there's still open issues about what are the other options that the officers reasonably have at that time. I mean, there's a lot else in this case besides the video that could matter to the answer. I think that those other options would matter for the totality of the circumstances. And, again, in Hart, this court found that the immediacy of the threat could be case dispositive. But I also don't think that there's a genuine issue of material fact as to those other options, because there's no evidence in the record that rebuts the officers' sworn testimony that stated that they couldn't use the pepper spray or the tasers at the time and that they couldn't have waited any longer because he had come around their barrier. Now, I understand that a plaintiff has an expert who said that they maybe should have used less than lethal options, but there's no analysis of those options in his report at any time. It is just a simple conclusion where he says they should have used less lethal options. So instead of analyzing it and explaining, for example, how a taser could be used in this situation, he just concludes completely without factual reference that he believes it should have been less lethal. Additionally, we filed a Daubert motion on this issue of the expert that was not resolved by the district court. So I don't think it would be proper for this court, without resolving the Daubert issues, to rely on the expert opinion anyways. But again, those other options are sort of that extra part of Graham in the totality of the circumstances. It's not one of the basic factors that we're looking at. And here we have someone advancing on officers with a knife, and it's in line with the state of Hernandez and in line with Hart to find that he did pose an imminent threat. And in Hart, this Court looked at those same facts to find also, for example, that it was a severe crime because advancing on an officer with a knife constitutes aggravated assault. The Court also found that it necessarily constitutes active rather than passive arrest. And that's also, although Hart was a California case, that's also consistent with Arizona law, because Arizona law holds that if you use any force or any other means creating a substantial risk of causing physical injury to the peace officer, that you're actively resisting arrest. That's ARS 13-2508. And again, he's advancing despite their commands and despite their warnings that they're going to shoot him if he keeps coming. He's understanding these warnings. He's responding to them. But he's still advancing, and that also puts the officers in an objectively reasonable sense of harm. Or sense of fear. They understand that he's a threat. They understand that he's willing to continue advancing despite 20 lawfully given commands, despite threats that they might shoot him. And Plaintiff even agrees in this case that they even tried to draw out this conversation. You can hear them on the video trying to talk to him, telling him, we don't think you're crazy, but do you want to put this on my conscience? The officers were following their training and trying to draw this out and trying to deescalate the situation. So even to the extent that Plaintiff's expert says, well, they should have used less lethal methods first, drawing out an encounter is a less lethal method of dealing with a suspect. Trying to talk with them, trying to draw it out, telling him they don't think he's crazy. They did use other alternatives until it was no longer safe. And once he came around the front of her vehicle and she no longer could hold that L-shaped position with Officer Batway, she no longer felt safe because she didn't have her barrier any longer. It really isn't until Singh comes around into her space that she starts to feel that threat, and that is when she ultimately used force. So, like I said, I think a lot of the issues here overlap both in terms of Glenn because the same kinds of gram factors are at issue as with the cross-appeal. Glenn has so many differences from this case. Again, it was a response to a domestic issue. He never moved towards the officers. He didn't move until he was shot. He never advanced on the officers with his weapon. The officers never attempted to talk calmly with him. Witnesses at this scene explained that the officers came in very hot and just kept yelling at him the whole time. He didn't understand, and they used multiple uses of force. I think we can look at those same issues and kind of map them onto the gram factors for the purposes of cross-appeal. You know, deadly force was used, but there was a severe crime at issue. They were responding to somebody who had attempted an armed robbery. He was actively attempting to resist arrest, and he was an immediate threat to them, which is the most important factor. So we would urge this court to affirm on the purposes of qualified immunity because no case put Officer Smith-Peterson on notice, and then we would ask to reverse on the issue of whether her force was reasonable as a matter of law. Thank you. Thank you, Counsel. This is one of those rare cases I'm tempted just to sit down and say, do the best you can. Well, you're free to do that. We won't stop you. I'll make a couple of short comments, and then I'll cede the rest of my time back to the court. First of all, video evidence still requires interpretation. It always reminds me of Mona Lisa's smile. Millions of people have looked at that portrait, and you'll get half of them say she's smiling, half of them say she's just thinking about something, and nobody agrees. Video evidence has to be interpreted by the finder of fact to figure out what it actually means. There was opportunity for Officer Smith-Peterson to move away. She had been using cars as a barrier. In this last movement that stopped, she could have just backed up a little bit further behind the car. We're not quite sure of the distance here. We were discussing that between ourselves. Our estimate is outside of taser range was what we seem to recall from the deposition testimony, say 10 to 15 feet, but not open distance, distance with an obstacle between the officer and Mr. Singh. And finally, there was no imminent threat here. The other cases that my colleague across the aisle talks about, there's an imminent threat. You need a split-second decision, and the courts won't fault you for that, but here there was no imminent threat, no split-second decision needed to be made. I'll receive my remaining two minutes to the court, and thank you very much. Thank you, counsel, for your arguments this morning. This case is now submitted, and that concludes our arguments for this morning. Thanks to counsel and court staff.
judges: GRABER, DESAI, ALBA